UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| STEVEN W. LANDERS, et al., on behalf of themselves, all other similarly situated, and the Class they seek to represent, )))) | |
| Plaintiffs, )) | |
| v. )) | Case No. 1:17-CV-20-SNLJ |
| MONSANTO COMPANY, ))) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

Plaintiffs Steven and Deloris Landers are soybean, corn, and cotton farmers in New Madrid County, Missouri. They filed this action on behalf of a class of plaintiffs who farm in Alabama, Arkansas, Illinois, Kentucky, Minnesota, Mississippi, Missouri, North Carolina, Tennessee, and Texas, and whose crops were affected by the herbicide dicamba. Plaintiffs filed this action against defendant Monsanto Company, alleging that Monsanto's "Xtend seed system" and its purchasers' inevitable use of dicamba --- a drift-prone herbicide --- has resulted in the loss of hundreds of thousands of acres of farmland.

Defendant Monsanto has moved to dismiss.

I.   **Factual Background**

According to the complaint, the putative class of plaintiffs grow a variety of crops in ten states. Defendant is a global agrochemical and agricultural biotechnology corporation, well known for its development of genetically engineered ("GE") seeds in addition to its development of herbicides. At issue in this case is the commercial release

1

and sale of two of defendant's GE seeds, Roundup Ready 2 Xtend soybeans ("Xtend soybeans") and Bollgard II XtendFlex cotton seeds ("Xtend cotton") (together, the "GE seeds" or "Xtend seeds").  The GE seeds were subject to federal regulation by the Animal and Plant Health Inspection Service ("APHIS"), and following an investigation of their safety, they were deregulated, which allowed them to be sold.  Xtend cotton seeds were first sold in 2015, and Xtend soybean seeds were first sold in 2016.

The Xtend seeds are unusual because they are resistant to the herbicide dicamba, which has been sold since 1967 by several companies, but not Monsanto.  Before 2015, dicamba was not often used by American farmers in-crop because it is a "highly volatile" herbicide that "is prone to drift" onto surrounding properties.  Drift is a term used to denote the airborne movement of herbicide spray particles to non-target or neighboring sites, sometimes miles away.  Also, dicamba is a selective herbicide, meaning that can kill broadleaf plants such as certain fruit trees, nut trees, vegetables, and notably, cotton and soybeans that are not genetically engineered to withstand it.

As this Court understands it, dicamba historically has been used during the "burndown" period, meaning it was applied before the planting of seeds as a pre-season weed control option.  When applied in the burndown period, dicamba's drift problem is not as pronounced as it is when applied "over the top" of crops, but in general, dicamba has not been used over the top of crops after crop emergence.  With the development of dicamba-resistant seeds to produce crops, spraying dicamba over the top has become an option – albeit an unlawful one – for farmers to use as a weed-killing herbicide.

Unfortunately, the volatility and drift problems of older formulations of dicamba are no less present, as is the case here.

Defendant represents that its new dicamba technology, XtendiMax, just recently approved, will not share the same drift problems as old dicamba. If applied correctly, XtendiMax should kill broadleaf weeds on the fields of dicamba-resistant crops and will not drift onto the property of neighboring landowners. Plaintiffs allege that defendant invested over a billion dollars into the development of XtendiMax because of the rise of "super weeds" that are resistant to Roundup, another Monsanto herbicide. Roundup, which contains glyphosate, is a non-selective herbicide, meaning it can kill most plants. Dicamba can be used in conjunction with Roundup, and together, these two herbicides will kill most weeds, increasing the yield of the farmer's genetically-engineered crops. But plaintiffs allege that due to old dicamba's volatility and drifting, it can serve as a vehicle that transports Roundup miles away, possibly causing great damage to many types of plants not genetically engineered to withstand dicamba or Roundup.

Notably, defendant sold the Xtend seeds in 2015 and 2016 before the Environmental Protection Agency approved the seeds' corresponding weed-killing herbicide, XtendiMax, for commercial release. Plaintiffs allege that defendant violated standard industry practice and committed a number of tortious acts by releasing its new GE seeds without such an existing, approved herbicide on the market as a "complete crop system." The foreseeable result of this negligent act, plaintiffs contend, was that third-party farmers were enticed to spray dicamba onto their new GE seed crops to curb

inevitable weed growth and that the dicamba drifted to neighboring fields and caused millions of dollars in damage to plaintiffs' crops.

Plaintiffs acknowledge that at all relevant times of this lawsuit – 2015 and 2016 – it was a violation of state and federal law for the third-party farmers to use old dicamba on the seeds. Defendants maintain such use was also expressly prohibited by product use labels on the bags containing the GE seeds. Plaintiffs allege that the Xtend seed farmers used old dicamba regardless of these prohibitions.

Plaintiffs further allege that defendant's "representatives made a practice of directing farmers who purchased the Xtend seeds to illegally spray dicamba to their Xtend crops to protect their crops." Comp. ¶ 120. Specifically, plaintiffs submit the testimony of one such farmer who purchased defendant's dicamba-resistant cotton seeds and admitted to illegally spraying dicamba over the top of his crops. The farmer testified before the Arkansas State Plant Board on the allegation that his illegal action of spraying dicamba on his property damaged his neighbor's non-dicamba-resistant crops. Further, the farmer testified that a representative of defendant instructed him that he could spray dicamba over the top of the cotton that emerged from defendant's dicamba-resistant cotton seeds.

Plaintiffs claim they were harmed by defendant's release of the Xtend seeds because it was foreseeable that third-party farmers who purchased the seeds would illegally spray older formulations of dicamba onto their own crops to kill weeds, and that dicamba drifted onto plaintiff's property, causing millions of dollars of damages. Plaintiffs identify eleven counts in their complaint, including (1) strict liability –

4

defective design; (2) strict liability – failure to warn; (3) negligent design and marketing; (4) negligent failure to warn; (5) negligent training; (6) breach of implied warranty of merchantability; (7) fraudulent concealment; (8) unjust enrichment; (9) punitive damages; (10) civil conspiracy; and (11) class action.

## II. Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content. . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)).

When reviewing a Rule 12(b)(6) motion, if documents outside the pleadings are presented and not excluded, the motion must be treated as a motion for summary judgment. Fed.R.Civ.Pro. 12(d). However, "Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or [in] opposition to the motion." *Gorgo v. Best Buy Co.,*

5

*Inc.,* 760 F.3d 787, 791 (8th Cir.2014) (citation omitted).  Documents that are necessarily embraced by the pleadings are not matters outside the pleadings for purposes of Rule 12(d). *Id.* "Documents necessarily embraced by the pleadings include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" and may be considered in a motion to dismiss.  *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012).  Further, "any error in a district court's failure to treat a motion for judgment on the pleadings as one for summary judgment 'is harmless if the nonmoving party had an adequate opportunity to respond to the motion and material facts were neither disputed nor missing from the record.'" *Surgical Synergies, Inc. v. Genesee Associates, Inc.,* 432 F.3d 870, 873 (8th Cir. 2005) *quoting Kerr v. Fed. Emergency Mgmt. Agency,* 113 F.3d 884, 885 (8th Cir. 1997) (internal citations omitted).

### III. Discussion

Defendant moves to dismiss all plaintiffs' claims.

#### A. Proximate Cause

Common to all of plaintiffs' claims is the element of proximate causation.  To prevail, plaintiffs must establish that defendant's actions proximately caused plaintiffs' injury.  Defendant suggests that because it did not manufacture, distribute, or sell the dicamba that allegedly caused plaintiffs' damages, that it cannot be held liable for those damages.

Proximate causation is found when the defect in a product is the "cause or act of which the injury was the natural and probable consequence." *Pitman v. Ameristep Corp.*,

Case No. 2:14-CV-85 ERW, 2016 WL 5373530, at *6 (E.D. Mo. Sept. 26, 2016) (citing *Hargis v. Lankford*, 372 S.W.3d 82, 87 (Mo. App. 2012)). Generally, whether proximate causation exists is a question for the jury. *Tompkins v. Cervantes*, 917 S.W.2d 186, 190 (Mo. App. 1996). However, a court may decide whether proximate causation exists as a matter of law "when the evidence reveals the existence of an intervening cause which eclipses the role the defendant's conduct played in the plaintiff's injury." *Id.* "When negligence appears merely to have brought about a condition of affairs or a situation in which another and entirely independent and efficient agency intervenes to cause the injury, the latter is deemed the direct and proximate cause and the former only the indirect or remote cause." *Dix v. Motor Mkt., Inc.*, 540 S.W.2d 927, 933 (Mo. App. 1976) (citing *Duke v. Missouri Pac. R. Co.*, 303 S.W.2d 613, 617 (Mo. banc 1957)).

The mere presence of an intervening act does not insulate the defendant from liability. *Buchholz v. Mosby-Year Book, Inc.*, 969 S.W.2d 860, 862 (Mo. App. 1998). Instead, to cut off liability for the initial negligent act as a matter of law, the intervening act must rise to the level of a superseding cause. A superseding cause is a "new and independent force which so interrupts the chain of events initiated by defendant's negligence as to become the responsible, direct, proximate cause of the injury." *Vann v. Town Topic, Inc.*, 780 S.W.2d 659, 661 (Mo. App. 1989) (internal citation omitted). "For an intervening act to relieve the original tortfeasor from liability, the act cannot be a foreseeable consequence of the original act of negligence." *Buchholz*, 969 S.W.2d at 862. Thus, foreseeability is a key component in the determination of whether an intervening act constitutes a superseding act, relieving the defendant of liability.

7

Even intervening criminal acts may be foreseeable in the proximate causation analysis. A defendant "is not invariably excused from liability when the chain of causation includes a criminal act." *Finocchio v. Mahler*, 37 S.W.3d 300, 303 (Mo. App. 2000) (citing *Virginia D. v. Madesco Inv. Corp.*, 648 S.W.2d 881 (Mo. banc 1983)). However, "[a]lthough criminal conduct can hardly be said to be unforeseeable in this day and age, there remains consensus that liability should not be lightly assessed when the injury would not have happened but for criminal conduct." *Id.*

In a substantially similar case brought by a large-scale peach farmer against Monsanto, this Court initially observed that

> even if Monsanto was negligent in its release of the GE seeds without a corresponding herbicide, it appears that its conduct was simply too attenuated to establish proximate cause. Instead, plaintiffs' injuries stem directly from an intervening and superseding cause—the unforeseeable independent acts by the third-party farmers who unlawfully sprayed dicamba on their crops.

*Bader Farms, Inc. v. Monsanto Co.*, 1:16-CV-299 SNLJ, 2017 WL 1315792, at *3 (E.D. Mo. Apr. 10, 2017), *vacated*, 1:16-CV-299 SNLJ, 2017 WL 2813393 (E.D. Mo. June 29, 2017). This Court noted that even to the extent the third-party farmers' unlawful conduct was foreseeable, that foreseeability was negated by the GE seeds' product warning labels, which prominently advised that it was illegal to use dicamba with the seeds. *Id.* However, this Court later denied Monsanto's motion to dismiss and granted the *Bader Farms* plaintiffs' motion to amend their complaint when those plaintiffs added --- as plaintiffs allege here --- that Monsanto's representatives actually advised third party farmers to apply the old dicamba product to their Xtend crops. As this Court stated,

8

> Although the Court maintains reservation about whether defendant's action or inaction proximately caused plaintiffs' injuries, the allegation that defendant's representatives instructed seed-purchasing farmers to illegally spray dicamba on the defendant's seeds, if true, would seemingly negate the effectiveness of the product use labels attached to defendant's seeds in addition to altering the proximate causation analysis of this case.

2017 WL 2813393, at *3. Plaintiffs have adequately pleaded causation.

### B. Duty of Care

Next, defendant asserts that it owed plaintiffs no duty of care to prevent injuries caused by other manufacturers' products. "Whether a duty exists is purely a question of law." *Hoffman v. Union Elec. Co.*, 176 S.W.3d 706, 708 (Mo. banc 2005) (quoting *Lopez v. Three Rivers Elec. Coop., Inc.*, 26 S.W.3d 151, 155 (Mo. banc 2000)). "There is no general duty to protect a party against the intentional criminal conduct of unknown third persons." *Advance Rental Centers, Inc. v. Brown*, 729 S.W.2d 644, 645 (Mo. App. 1987). However, such a duty may arise "where 'special relationships' or 'special circumstances' exist such that an act or omission exposes someone to an unreasonable risk of harm through the conduct of another." *Id.* Defendant says that because no such special relationship or circumstances exist here, that it had no duty to plaintiffs, and plaintiffs' claims must be dismissed.

Of course, Monsanto did not manufacture the dicamba that allegedly drifted from neighboring farms onto plaintiffs' crops. Rather, plaintiffs seek to hold Monsanto responsible for selling an "incomplete system" of seeds such that third parties bought Monsanto's dicamba-resistant seeds and foreseeably (but illegally) applied another

9

manufacturer's dicamba. Plaintiffs identify several special circumstances that they say give rise to a duty:

- Defendant designed its product to be used with dicamba.
- Defendant marketed the product to be used with dicamba.
- Defendant advertised it to be used with dicamba.
- Defendant promoted it to regulators and the public to be used with dicamba.
- Defendant failed to adequately train its representatives to prevent inappropriate use of dicamba.
- Defendant refused to allow university scientists and independent third parties to research the risks involved.
- When regulators failed to approve defendant's own dicamba-based herbicide, defendant chose to sell its GE seeds without changing its advertising and without altering its behavior or its training.
- Defendant's own representatives encouraged purchasers of the GE seeds to spray old, existing versions of dicamba over the top of the crops.

"Special circumstances" is typically defined in the context of attacks by third persons, and it includes circumstances in which a known dangerous or violent individual is present or where an individual present has conducted himself so as to indicate danger, and sufficient time exists to prevent injury. *See id.*; *see also Gaines-Tabb v. ICI Explosives USA, Inc.*, 995 F. Supp. 1304, 1317 (W.D. Okla. 1996) (noting "special circumstances"

existed "where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through the misconduct of third persons which a reasonable person would have taken into account"), *aff'd*, 160 F.3d 613 (10th Cir. 1998).

Again, plaintiffs' allegation that defendant's representatives told third parties to apply dicamba herbicide in contravention of the warning labels suffices to create a special circumstance that, at least for purposes of the instant motion to dismiss, creates a duty to plaintiffs. Defendant is of course correct that it is not an "innkeeper" or other property owner in a premises liability action typical to this line of authority. But defendant knew that "old" dicamba could cause damage to neighboring crops, and, according to the allegations, defendant released a seed that invited the dangerous herbicide's use. Defendant's representatives are alleged to have in fact promoted its use. Those allegations squarely distinguish plaintiffs' case here from those in which courts have found a manufacturer owed plaintiffs no duty of care regarding actions by third parties. *See, e.g.*, *In re Deep Vein Thrombosis*, 356 F. Supp. 2d 1055, 1068 (N.D. Cal. 2005) (aircraft manufacturer had no duty to warn airlines or passengers about risk of health problems resulting from unsafe seat design installed in aircraft after delivery to airlines); *Hamilton v. Beretta* U.S.A. Corp., 96 N.Y.2d 222, 235 (N.Y. 2001) (handgun manufacturer owed no duty to plaintiffs who were harmed by third parties' use of handguns). The Court holds that plaintiffs have sufficiently alleged that defendant owed a duty of care to plaintiffs.

## C. Fraudulent Concealment

Plaintiffs allege that defendant concealed (1) the risks to third parties of illegal herbicide spraying from "farmers, state regulatory and legislative bodies, farming associations, the general public, and Plaintiffs," (2) that defendant had created a situation where illegal spraying would happen, and (3) that "catastrophic damage" would occur to third parties as a result. (#1 at ¶¶ 347-48.)

To prevail on this claim, plaintiffs must show that defendant had "a duty to speak." *Cross Oil Co. v. Phillips Petroleum Co.*, 944 F. Supp. 787, 792 (E.D. Mo. 1996). A "duty to disclose only arises when there is a confidential or fiduciary relationship, when there is privity of contract or when 'one party has superior knowledge or information not within the fair and reasonable reach of the other party.'" *In re Gen. Motors Corp. Anti-Lock Brake Products Liab. Litig.*, 966 F. Supp. 1525, 1535 (E.D. Mo. 1997) (hereinafter "*GMC*"), *aff'd sub nom. Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999). As the Missouri Supreme Court has stated, "[s]ilence can be an act of fraud where matters are not what they appear to be and the true state of affairs is not discoverable by ordinary diligence." *Bayne v. Jenkins*, 593 S.W.2d 519, 529 (Mo. banc 1980).

Defendant argues that it had no duty to speak because it was not in privity with and plaintiffs and because the "risk to third parties from illegal herbicide spraying" (#1 at ¶ 347) is common knowledge and in the public domain. The Court agrees that the risks of illegal dicamba use is readily available information. However, that alone is not the only subject of plaintiffs' fraudulent concealment claim. Plaintiffs also claim that the

defendant concealed its knowledge that use of dicamba by farmers on the GE seeds was inevitable. As explained above, plaintiffs even claim that Monsanto representatives told its GE seed buyers to apply dicamba in contravention of the warning label and despite the known risks to third parties. Thus, plaintiffs do plead that defendant had "superior knowledge or information" about the risks of dicamba use as it pertained to defendant's products such that a duty to speak arose. Although tenuous, for purposes of a motion to dismiss, plaintiffs have sufficiently stated a claim for fraudulent concealment.

## D. Civil Conspiracy

To demonstrate a civil conspiracy existed, plaintiffs must show: "(1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) [plaintiffs were] thereby damaged." *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. banc 2012). Plaintiffs argue that their allegations line up with those elements as follows: Defendant (1) conspired with purchasers of its GE seeds (2) to unlawfully market defendant's "crop system," to illegally spray dicamba as an herbicide, to protect its seeds through illegal spraying, and to market its GE seeds "such that farmers in the affected states would have no choice but to purchase Monsanto's GE seeds (#1 at ¶¶ 368-69), and (3) defendant, through agents and representatives, encouraged and directed its purchasers to illegally spray dicamba on the GE seeds and (4) numerous purchasers in fact did so in furtherance of the conspiracy. (*Id.* at ¶¶ 370-71.) Finally, (5) plaintiffs were thereby damaged. (*Id.* at ¶ 372)

Defendant contends that plaintiffs' conspiracy claim fails because their underlying claims fail. However, the Court has already determined that plaintiffs' other claims are adequately pleaded.

Defendant further argues that plaintiffs have failed to plead the elements of a conspiracy claim. Although this Court found no Missouri law requiring identification of the co-conspirators and the time and place of the agreement --- Missouri does not require "precise" allegations at this stage of the litigation, *see, e.g.*, *Gettings v. Farr*, 41 S.W.3d 539, 542 (Mo. App. 2001) --- this Court finds that plaintiffs have not sufficiently articulated the elements regarding unlawful objective and meeting of the minds. Plaintiffs state that defendant conspired with farmers to "market" the GE seeds so that other farmers would have no choice but to use the GE seeds themselves. However, plaintiffs' allegations do not support that the other farmers agreed to help sell defendant's seeds. Nor do plaintiffs even allege that defendant told GE seed buyers that they were required to use dicamba. Despite the contortions plaintiffs have attempted in order to hold the defendant and (nonparty) farmers responsible for co-conspirator liability, the allegations are simply too vague and tenuous to support a conspiracy claim. Count X will be dismissed.

### E. Unjust Enrichment

Finally, defendant argues that plaintiffs' claim for unjust enrichment should be dismissed. Plaintiffs claim defendant was enriched by the sale, profits, and anticipated profits of its GE seeds from a benefit conferred by "duping the public and cynically marketing" an unsafe product that resulted in destruction of plaintiffs' property. (#1 at ¶¶

357-60.) Plaintiffs state they were forced "to serve as an involuntary experimental testing ground for [defendant's] new products…." (*Id.* at ¶ 360.) In addition, plaintiffs allege defendant benefited to the tune of millions of dollars in profits, with anticipated profits in the billions, at plaintiffs' expense. (*Id.* at ¶¶ 358-59, 361.)

Defendant contends that plaintiffs have not pleaded unjust enrichment because the money paid --- i.e., the "benefit" --- to defendant was not paid by plaintiffs. "The Missouri Supreme Court has held that to state a claim for unjust enrichment, a plaintiff must allege that a benefit was conferred on the defendant by that particular plaintiff." *Khaliki v. Helzberg Diamond Shops, Inc.*, 4:11-CV-00010-NKL, 2011 WL 1326660, at *5 (W.D. Mo. Apr. 6, 2011) (citing *American Civil Liberties Union/E. Mo. Fund v. Miller*, 803 S.W.2d 592, 595 (Mo. banc 1991)). Plaintiffs respond that defendant defines "benefit" too narrowly. They insist that they conferred a benefit on defendant (profits) and that the "value of which subjected plaintiffs to be defendant's test subjects for its incomplete 'crop system,' by selling a product that damaged plaintiff's property, not paying for the damage, deflecting responsibility for the harm, and retaining the profits." (#16 at 34.) Plaintiffs, however, have no support for their position that they were responsible for the profits conferred upon defendant. They have pleaded that they were harmed as a result of defendant's actions, but they have not alleged plaintiffs themselves "conferred" a benefit on defendant.

Accordingly,

IT IS HEREBY ORDERED that defendant Monsanto's motion to dismiss is DENIED in part and GRANTED in part.

IT IS FURTHER ORDERED that plaintiffs' Count VIII for Unjust Enrichment and Count X for Civil Conspiracy are DISMISSED.

Dated this __17th__ day of August, 2017.

                                                                         _____
                                                                          STEPHEN N. LIMBAUGH, JR.
                                                                          UNITED STATES DISTRICT JUDGE